Good morning, ladies and gentlemen. I'm Ben Bendit, software engineer for Google. Good morning, your honors. In this brief report, I'd like to discuss plenty of instructions, including plenty of terms, modified terms. I'll come back to this result with some bearing references. I'd like to discuss plenty of terms, including plenty of terms, subject, of course, to questions from the court. What's not entirely clear is what we have to assign respect to. If you work through the document, of course, instructions and bearing references, for example, before the final judgment, is that only relevant to the preliminary injunction? Correct. The construction of the bearing reference terms is relevant to the preliminary injunction, but it's also relevant to the infringement on the mandate. But if the court were to find that the claims instruction on the bearing references was wrong, then it would go back down. And those would be decided? Right. Would that be a ground for a permanent final judgment? No. No. No, not at all. Because the final judgment related to the – Redmond only agreed, only consented, that there would be no infringement if the construction of the modified terms was affirmed. If the construction of the bearing references is affirmed, but the construction of the modified terms is vacated and changed, then Redmond would go forward with the construction, present construction, of the bearing references. So in your view, the only ground for a permanent final judgment is that we agree with the district court's instruction to modify the terms. If we disagree with that, then we go and reach the preliminary injunction, and then it's only then that we decide to leave the construction of the bearing references. That's correct, Your Honor. But I would also suggest that the court should proceed with the additional terms because – You might advise your opinion about that. Well, I wouldn't suggest that I would advise my opinion. I would suggest that these five terms, the modified terms, the bearing reference, the kind of activity resolved, and the two other terms directly related to the infringement, are not going to be judged. But not going to be judged.  Your stipulation, as you understand it, is a stipulation because the Google Accused device does use the model code, and so what the district court said is there's a disclaimer that applies to all of these terms. There's a disclaimer that says you can follow the source code and text without the end of the story. Is that the reason why you have the stipulation? No. That's not the reason why we have the stipulation. The reason why we have the stipulation is the construction of the modified terms doesn't read on any of them. It doesn't read on the preferred bodyments. It doesn't read on any of the bodyments. And it would not read on what Courgette does because Courgette doesn't – it's not a program that's in its original – Is it executable or just original form? Does the Google product not have something in its original form, as well as not being in its original executable form? I would say more that the Courgette does not stay in its original form, certainly. And it doesn't stay in its original executable form either. So the stipulation is not in its original form or not in – and it's not in its original executable form. So that's the crux of what we have to be willing to reverse in order for it to go back. That's correct. And this, of course, is a construction of – So just to be clear, I just want to make sure I'm clear. So I would agree with you that it doesn't require executable, but it does require original form stipulation still stands. If the claim term remains in its original – It requires that the input or the original – the new program or the new data table needs to be in their original form. But don't have to be executable. Well, because you made a distinction. Your program has to be executable. The data table doesn't have to be. You made that up. That's correct. But so if the data table, though, may not have to be an executable program but does have to stay in its original form, your stipulation still stands, meaning you're still stipulating to not infringe on it. That is correct, Your Honor. Because there's – I can't say anything today. I can't think of an instance where the new and old data tables would be in their original form but were referenced as being in place. Excuse me. Part of the problem that we're having here is the stipulation discussed in Jane. And in Jane, yes, you supposedly have a stipulation which relates to the product. So we should figure out what the meaning of the stipulation is. How does this claim construction render this particular product or method consistent on infringing? And, you know, we just say, okay, we agree that this is for a claim construction, and it is correct, and we affirm. But we need to understand how that claim construction applies to the product that these people are committing. Well, I would suggest that Jane – the Jane case is very different. The stipulation doesn't even identify the claims that it should. Counsel for both parties – No, I'm not – It's not the same time where I probably – I'm sorry. You need to understand how a claim construction applies to the product in order to begin. Defining those questions in the abstract is extremely difficult. I understand, and I think this relates to what Judge Humerson said, that the Google approach uses the body a lot, right? I would suggest that the Google approach breaks down the original inputs, breaks down the new and old data tables, parses them, disassembles them, creates frames, but that's not symbolic. Well, I would suggest that it indexes them and converts the numerical to symbolic references. It's in the same way that Patton strives to convert numerical references into – It uses symbolic logic, right? It uses what I would call emanating references as they use symbolic logic. Yes? All right, so the question then is, was the district court correct in saying that this terminology, the modified terms, exclude the use of symbolic logic, right? And that the district court reached that conclusion based on the prosecution history. Now, that would be incorrect, I believe, Your Honor, because assuming the modified terms, if you look at the construction of the modified terms, the court is not saying anything about symbolic code. Nothing. That has to do with the construction of the executable program and that. But not the modified terms, not what it means to be a modifiable data table, a modifiable program. He's not there excluding symbolic code, symbolic in the sense of source code. What he's saying, what he did say in constructing the modified terms, he said that the programs have to be in their original entity form before references are being replaced. Are you saying it can't be symbolic in the input? That's all that you gave away. You didn't say it can't be symbolic in the modified. In fact, you're using labels. You're disclosing using labels. Labels are by their very nature a symbol and that's not what you're saying, excluding. You can't start out with a table that is all labels or any symbols. Which is source code. I didn't get that from your brief. I got it from you now. But I would suggest that, so what Judge Moore is saying is correct. If you're referring to the file history, the way the applicant distinguished the Okazumi reference and other references is that Okazumi just deals with source code inputs. You start with a source code program. Here we don't. This invasion has to do with numbers, not symbolic code. And the way it works is you break down the numbers into symbolic references, into label marks, into invariant references. So it's quite different from RLR. And that's the only limitation that we place on the invention, if you will, on the invention. But to get back to your original point, Judge Sykes, about the stipulation, we do believe that there is enough description of Courgette in our briefs and in the appendix that we actually cite the description we described of Courgette in connection with the presumption motion to give the court a sense of why it is that Courgette would not infringe if the court affirmed the construction of the modified similarity curse law. And that is because Courgette, that is because Courgette, the modifications made to Courgette are not in its original executable form except for reference to opinion related. That's why. So we think there's enough in court to rule on stipulated judgment and not so much to provide an advisory opinion regarding the remaining powers, but because this was a recommended judgment to end because they're wrong, end because we hear, we do think that it would be in support of the judicial economy to rule on the five terms addition. But I do think it's important to point out why it is that the court's instructions to modify terms are incorrect. And that is because they did not rule on any body, not just any preferred body, but any body. And even, I'm going to point this out, I'm going to take this before I reply, but even the figures who points to a modifiable program do not mean in their original form because they add label marks. In fact, there's no embodiment that would qualify under the court's instructions to modify terms. And because of that, it's powerful evidence that it's wrong. The other, the second reason why the construction of modified terms is wrong is because as in Cara, as in Cara's case, when the inventor wants to use the word replace, he did so. And he wouldn't have used the term replace explicitly in the asserted claims because he knew how to use that term as he did in the unasserted claims. We do feel that there's no disclaimer. If he reported no disclaimer anywhere in the specification of the file history, he would have said, uh-huh, the prior art was so close that we have to have these modified programs or these modified data tables need to be in their original executed form. That never happened anywhere. Another reason why the court's instruction was incorrect. We also think that the court's instruction of the modified terms was wrong because he was looking at Cara's case, right? That's what we're talking about, what form the program is in Cara's case. That's right. That's right. What form these programs or data tables have to be in or when they're input into the DIP algorithm, into the tool that's used to check the differences between the old and the new program. But the particular form. In your view, they don't have to be in an executable form? In the comparison statement? In our view, it doesn't matter actually what form they're in when the comparison is made. So long as the change in the merits of references are changed and modified into symbolic or what we call invariant references. That's the key to this invention. The inventor stepped back and said, what's causing these large dips? What's causing the large dips? If you shift the numeric references, if I can get rid of somehow the shift in the numeric references and make them go away, if you will, in the generation of the DIP, then that's my invention. I'm going to do that by reflecting the changed references as invariant. So they disappear and they go away. If I do that, I'm out of time. I did want to reserve a couple of minutes. We'll give you two minutes. Hold on. Thank you, Your Honor. If you could please record. The beginning of the court's analysis and perhaps the end of the court's analysis is whether paragraph 9 of the stipulated judgment refers to the definition of the modified terms. If you endorse that instruction, the modified terms, then we're done. We don't get the preliminary injunction. We don't have to get any of the other terms because that is the basis in consideration of Jane. Jane, in the medical case, estimates for the entry of the judgment providing the court with the specific term and specific actual claim. And Courgette operates very differently, as Judge Woodluck found. Courgette is not about exclusion, which is the central part of the patent. The patent identifies what changes due to addition, demodification, and limitations. And it makes a comparison. And then it excludes those things to decide what is the difference. Courgette, as Judge Woodluck found, in what is, again, abundantly stated in the record, is not about exclusion. It preserves everything. It preserves all things in source code. And it has to operate in the world of source code. Its claims are clear. For example, the defendants of 8750, in responding to the Okazumi concern, the applicant said, in a strategy that's in between two versions, there's no source involved. There are neither statements nor any textual or other symbolic representation of the program even exists. And they go on and on and on to say that their invention doesn't even remotely consider or approach what happens in Okazumi with symbols or with statements or any textual references. We need to operate for this invention in the world of the original and executable format. And that's what this invention does. It takes the old and the new terms and then modifies them in that format with one thing in mind. And that one thing in mind is to find these corresponding references which change due to additions or deletions. And that's all that it does. Courgette's quite the opposite. If the court focuses on that one claim term, the modified claim terms, and agrees, then the court is settled. If I understand the difference between and you may not understand it, but if your opponent is saying, well, if you start with an executable program, that phenomenon doesn't make any difference, as opposed to something else, which Courgette does. Or as you say, when you actually get to the point where you're making comparisons, you've got to have an executable program and not just a comparison or something that clearly is involved. Right? That is one of the points of differentiation that's got to be discussed. Well, it's clear that just, it should be clear from their disclaimers of Okazumi, they said in extracting the div, there's no source involved. And then you go on. I don't stop there. They say there's neither statements or any textual or any other symbolic representation. They don't... But the labels are themselves symbolic, right? Labels are symbolic. That's not an actual register entry. It's a symbol. A label might be symbolic, but they go on to disclaim that nothing in their system can be symbolic. And so it's limited by their statements during the prosecution. But the inherent references are always employed with labels. And so you're not saying that they... I'm a little nervous that the construction that you're suggesting is what the district court adopted would actually render none of their inviolations in the scope of their claim. No. But labels are symbolic, so to that extent, at least they might be symbolic. To that extent that there's a label, but a label's also defined as an invariant reference. To the extent that you're trying to operate as something that is outside of an executable format, other than to put on a label to designate something, we're talking about the version. So that was the construction of the model by Holder. I'm sorry. I just don't understand that. And I want to understand it. Certainly. So their argument, as I understand it, is we... Of course, they didn't ever claim anything, but assuming that that's wrong. So then their argument is we can claim something, but what we can claim, if anything, is the use of symbolic code in the thing you start with, not in the modified thing that is being produced for the process of making the modification. Right? Am I misunderstanding their argument? Is that what you think they argued today? I think that's the first time I've heard that, or read that. And what the court found and what is supported by the... To be honest with you, I have a lot of trouble trying to understand the case from a technological standpoint. You know, I'm not... And I'm not completely unaware of what's in there. You know? I have a very modest amount of knowledge in that area, but it's very difficult to understand. Like, for example, when I read the disclaimer, I was like, you can't really be claiming all the symbolic use because they themselves in every single embodiment is labeled with their symbols. And that can't be what they mean by that. And that's why I was going to put on the table what they did mean. I don't think that that's what they mean. I think what they mean is when the core signing entries that change only due to additions and deletions are identified in the original executable format, then a label might be attached to it to say, this is what we are calling an invariant reference. And that's all that that does. It's not an analysis of it in a symbolic representation, nor does it use symbolic logic. So we are working from the original program. We get to the modified program. And what is happening there is that this comparison, the identification is done. What's changing only because of additions and deletions? And then there may be a label. There may be something that says this is what we are going to call an invariant reference. But it's all operating and it's all analyzing in the executable format. So, yes. So let me back up. So are you saying that you can use symbols but only if you use labels and you can't use symbols That's the only place where it might come in. They are analyzing it. They are doing this process all in the original executable format. Because that's what they have to claim. Well, the invariant references are still, I believe, in an executable format. There's something that says this is an invariant reference. And as we look at the claims, the difference resolved is generated by the old program and the new program having invariant references. Those are excluded. In order for you to prevail, do you have to decide this, which is quite frantic and confusing, or could you prevail by just showing that the Google product is in the original form and therefore all the supplementations are out. So it's not relevant whether it is or is not according to symbolic logic. You can just show there's no original form. I mean, it takes the same, it breaks it into eight strings, it does all this stuff. What you have is not the form that the input started with. Yes, ma'am. So that would be a basis upon which you would prevail that there was an obfuscation or a successful review that needs to resolve so that is what they would claim to be the reason why. Yes, ma'am. This isn't an original form either. No, it's a version in the original executable format and all that they've done is they've made this corresponding one-to-one connection. And they say these have been very prosperous references. They exclude them. They've got to be modified old and modified new tables or executable programs. And the native tables  by what they've said in prosecution history in response to Okazumi. And then we have... It's a version. That's right. Yes, ma'am. There was a reference to the Kerry case and what the court should do with regard to disclosures and the like. And I just want to note the Kerry case, which I believe was counsel involved in that case, was different. That was what did the key mean? What is the construction of the key? And that case did not have the very rich background of the disclaimers as we have in this case. In this case, we have 11 pages submitted refuting Okazumi and saying time and time again this doesn't remotely approach or resemble Okazumi. This is all done in a world of executability. And that clear language is quite different to Kerry. The case is all just following the course it's done repeatedly since the Fiddlesticks and even before Fiddlesticks. We're looking... But it's very difficult to understand both sides of the reason because if you don't do a good job describing the technology and how it relates to the plaintiffs that's why we're having problems. And, you know, when you do a stipulation like this, there's a lot of common explanation as to why under the plaintiff's structure the plaintiffs don't even have to object. Well, one thing that the parties would agree on in negotiating the stipulation, obviously it was the stipulation objection, was in paragraph 9 with regard to this one issue, the construction of the modified terms. So, we have a whole different set of viewpoints than they do with regard to the construction of the other terms. But that's the one that was presented in the stipulation frankly with the James case and all that is in mind. That we needed to provide something to the court and that was something. So, but, James Whitlock, we believe, got it right. He worked very hard on the preliminary injunction. He has 55 pages in there and he looks at the declarations and he says, this is how the court did operate. There are no invariant references. It doesn't exclude specifically, it preserves. It preserves all the things in there. The term used is unique references, but everything is in there and then it maps things out and does a logical analysis to decide what should be included in a contract in a different result. That's quite different than this system which is an invention based upon exclusion. With regard to the preliminary injunction, Your Honor, we asserted that the court will only be firm on that and use discretion standards. The court is very clear, very careful in its analysis of the evidence and in fact, there can be no irreparable harm. There's no showing of it. Certainly, we will as a solvent defend it. We will not prevail over it, although we think it will if there's money damage to the decision. No, but there's no danger that money judgment won't satisfy, money judgment won't be satisfactory to compensate them. One of the instructive things is that the preliminary injunction issue is two years old now, and there's been no activity required for any other injunctive relief or any other kind of relief from that to now apply to this court and in fact, I'm not sure what this court would do to disagree with the preliminary injunction denial. There's nothing really before this court, so I think that that should be affirmed as well. Any other questions? Thank you, Your Honor. I heard counsel say that nothing in the system can be excluded from that. I would be very nervous about that because it would exclude all the embodiments from that. All of them. Because they all Because the invariant references are symbolic. Yes, the label marks are symbolic. That's the whole point of the invention, turning executable inputs with okazumi and not with okazumi source code inputs. That's what we distinguished. We started out with executable inputs, numbers, and we turned it into symbolic label marks. We turned it into invariant references. We have different forms. We have data structures. We have the translation data tables. It's all to turn what starts out as executable and make it symbolic so the changes don't have to be reflected in the data. That's the one thing. That's kind of contradictory to your data table argument. You argue the data table doesn't have to be a reference. Everything starts out with numbers. Exactly. And that's exactly the point of what was distinguished in okazumi. We're not trying to recapture okazumi and having source code inputs. We start out with numbers and we change it into symbolic. It's a source code  as well. Or text. Right. But including it,  get the rest. We have a whole description about how we mention it differently because okazumi is not a source code. Okazumi is a source code. And we start out with numbers. And in distinguishing claim one, unassertive claim one, which has executable code, we say okazumi is a source. This is executable. Symbolic said, there was no source code in this star. And either statements or any textual or other symbolic representation of the program even exists. In ours, inputs. That's when we're talking about ours. We say okazumi is source code. We have numbers. We don't know    so we          Questions? Any other finishes? Question? Any other questions? No. Thank you.